UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ERIKA CRYSTAL MENDEZ, et al.,

      Plaintiffs,

v.                                     Case No. 8:06-cv-563-T-24 MAP

UNITRIN DIRECT PROPERTY &
CASUALTY INSURANCE COMPANY,

      Defendant.
_____/

**ORDER**

This cause comes before the Court on Defendant's Motion for Judgment as a Matter of Law (Doc. No. 128) and Motion for New Trial (Doc. No. 129). Plaintiffs oppose the motions. (Doc. No. 140, 139).

**I. Background**

Plaintiffs filed suit against Defendant, alleging that Defendant acted in bad faith in failing to settle the wrongful death claim that was asserted against them. The wrongful death claim was based on a fatal traffic accident that occurred on October 21, 2004. Defendant was advised of the accident on October 25, 2004. Defendant sent the underlying claimant, Mr. Ackley, a letter on November 5, 2004 asking him to contact Defendant to discuss the claim. Mr. Ackley did not respond to the letter. Thereafter, on December 3, 2004, Defendant sent Mr. Ackley a second letter asking him to contact Defendant to discuss the claim. Mr. Ackley did not respond to the letter. Defendant did not make a formal offer to settle the claim in either letter.

On January 7, 2005, Defendant formally offered to settle the wrongful death claim for the policy limits of $10,000, but the offer was rejected. The wrongful death claim resulted in a

judgment against Plaintiffs in the amount of $630,000.

Plaintiffs' bad faith claim against Defendant went to trial, and the jury returned a verdict in favor of Plaintiffs, finding that Defendant acted in bad faith in failing to settle the claim against them. Thereafter, Defendant filed the two instant motions.

## II.  Motion for Judgment as a Matter of Law

When considering a motion for judgment as a matter of law, the court "must view all of the evidence adduced at trial and draw all reasonable inferences in the light most favorable to the nonmoving party." George v. GTE Directories Corp., 195 F.R.D. 696, 698 (M.D. Fla. 2000)(citation omitted). Furthermore:

> The trial judge may not re-weigh the evidence, make credibility determinations or substitute its judgment for that of the jury.  Moreover, the court must disregard all evidence favorable to the moving party that the jury is not required to believe. [T]he trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.... If reasonable minds could differ as to the import of the evidence, however, a verdict should not be directed.

Id. (internal quotation marks and citations omitted).

Defendant moves for judgment as a matter of law, arguing that under the facts of this case–an insurance company timely making affirmative efforts to contact the underlying wrongful death claimant, but was ignored–Defendant cannot be found to have acted in bad faith as a matter of law. Additionally, Defendant argues that the undisputed facts of this case show that there was no reasonable opportunity to settle this case. The Court rejects both arguments.

Whether Defendant acted in bad faith is a jury question, and the Court cannot say that no reasonable jury could have reached a verdict for Plaintiffs. The Court notes that Defendant makes persuasive policy arguments for finding that its actions could not constitute bad faith, such as arguing that bad faith should not be found when a claimant actively ignores an insurance

company's attempt to contact them.  Specifically, Defendant argues:

> [By interpreting existing case law] to mean not only that a claimant need not make a demand, but that he can consciously avoid contact with the insurer, Plaintiff attorneys are encouraged to avoid settlement and actively frustrate the settlement process. This case is a perfect example. There was no incentive for Mr. Ackley or [his attorney] to respond to UNITRIN's contact letters. To the contrary, under their reading of the law, it was [Mr. Ackley's attorney's] job, if not his ethical obligation, to avoid settling the claim for the policy limits in the hopes of later bringing a bad faith claim and recovering in excess of the policy limits. The law should not encourage this type of behavior, and [existing case law] should not be read so expansively as to reward it. While the law should discourage insurers from ignoring claimants, . . . it should not be turned on its head to encourage claimants to hide from insurers and run from settling claims for the policy limits. This is contrary to the express public policy of the State of Florida which favors settlement.

(Doc. No. 128).

Similar public policy arguments were made by Justice Wells in Berges v. Infinity Insurance Company, 896 So. 2d 665, 685-86 (Fla. 2005)(Wells, J., dissenting):

> I must also recognize that there are strategies which have developed in the pursuit of insurance claims which are employed to create bad faith claims against insurers when, after an objective, advised view of the insurer's claims handling, bad faith did not occur. . . . The goal of this strategy is to convert a policy purchased by the insured which has low limits of insurance into unlimited insurance coverage.
>
> It is my conclusion that this strategy is what was employed in this case and is the basis of this case. I cannot join in the majority's approval of what I conclude is a created-rather than a real-bad faith claim. Perpetuating this kind of bad faith action is not only wrong on the basis of the claims handling facts in this particular case but is greatly detrimental to Florida's liability insurance consumers because of the increases in their insurance costs.
>
> \* \* \*
>
> I do not believe that it is acceptable for the Court to merely say that bad faith is a jury question. It is the Court's responsibility to have logical, objective standards for bad faith and not to avoid setting definitive standards by declaring bad faith to be a jury question. The Court should recognize that it has the responsibility to reserve bad faith damages, which is limitless, court-created insurance, to egregious circumstances of delay and bad faith acts. The Court likewise has a responsibility to not allow contrived bad faith claims that are the product of sophisticated legal strategies and not the product of actual bad faith.

Id. However, these statements were made in a *dissenting* opinion, and as such, the majority of the Florida Supreme Court was not persuaded by these arguments. Therefore, based on Florida's existing case law, the Court cannot grant judgment as a matter of law for Defendant in this case.

Additionally, the Court denies this motion to the extent that it is based on the argument that there was no evidence that Defendant ever had a reasonable opportunity to settle Mr. Ackley's claim. Defendant concedes in its motion that Mr. Ackley was willing to settle his claim for approximately thirty days, and Defendant did not make a formal offer to settle the policy limits during that time. As such, the Court cannot find that there was insufficient evidence to support the jury's implicit finding that Defendant did have a reasonable opportunity to settle Mr. Ackley's claim.

For the reasons stated above, Defendant's motion for judgment as a matter of law is denied.

### III. Motion for New Trial

Defendant also filed a motion for new trial. A motion for new trial is governed by a less stringent standard than a motion for judgment as a matter of law. See George, 195 F.R.D. at 701; Johnson v. Clark, 484 F. Supp.2d 1242, 1246 (M.D. Fla. 2007). A court "may grant a new trial for any reason recognized at common law, even where there is substantial evidence supporting the verdict." George, 195 F.R.D. at 701. In determining whether to grant a new trial, the court may "independently weigh the evidence favoring the jury verdict against the evidence in favor of the moving party." Minks v. Polaris Indus., Inc., 2007 WL 1452906, at *2 (M.D. Fla. May 15, 2007)(citations omitted); Williams v. City of Valdosta, 689 F.2d 964, 973 (11th Cir. 1982)(citations omitted). Furthermore:

> [T]he trial judge must determine if in his opinion, the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. . . . [T]o assure that the judge does not simply substitute his judgment for that of the jury, . . . new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great-not merely the greater-weight of the evidence.

George, 195 F.R.D. at 701 (internal quotation marks and citations omitted). "The burden of showing the existence of harmful prejudice rests on the moving party." Richardson v. Bombardier, Inc., 2005 WL 3087864, at *6 (M.D. Fla. Nov. 16, 2005)(citations omitted).

Defendant argues that a new trial is warranted, because: (1) the Court quashed Defendant's subpoena of a key witness; (2) the Court allowed prejudicial evidence concerning Hartford's claim handling; and (3) the Court allowed prejudicial evidence concerning the execution of the excess judgment. Accordingly, the Court will address each argument.

### A.  Quashing of the Subpoena

Defendant argues that it should be granted a new trial, because the Court should not have quashed Defendant's subpoena of Joe Vaccaro, Mr. Ackley's attorney's paralegal. Vaccaro was the author of an email that was central to Defendant's defense theory that there was never really an opportunity to settle this case, because Mr. Ackley was setting the groundwork for a bad faith claim.

Defendant conducted a videotaped deposition of Vaccaro, during which he was questioned about the email. Thereafter, Defendant subpoenaed Vaccaro to testify at trial, and he moved to quash the subpoena, pursuant to Federal Rule of Civil Procedure 45. The Court granted the motion to quash, because Vaccaro lived more than one hundred miles from the Court and was a non-party. (Doc. No. 109). The Court rejected Defendant's argument that there was a

5

substantial need for Vaccaro's live testimony, since his deposition was videotaped and he was questioned about the email during his deposition.

Defendant now argues that the Court's decision unfairly prejudiced it, because Defendant was not able to question Vaccaro about the answers given by Mr. Leopold and Mr. Hahn when they testified at the trial. The Court rejects this argument and finds that Defendant was not unfairly prejudiced by not being able to have Vaccaro testify live and be questioned about Mr. Leopold and Mr. Hahn's trial testimony.

### B. Hartford's Claim Handling and Execution of the Excess Judgment

Next, Defendant argues that it should be granted a new trial because the Court allowed prejudicial evidence concerning Hartford's claim handling and the execution of the excess judgment. In order to grant a new trial based on an erroneous evidentiary ruling, Defendant must show that the ruling produced a substantial prejudicial effect. See SEB S.A. v. Sunbeam Corp., 148 Fed. Appx. 774, 790 (11th Cir. 2005)(citations omitted). In determining whether a party's substantial rights were affected, the court "analyze[s] factors including the number of errors, the closeness of the factual disputes, the prejudicial effect of the evidence, the instructions given, and whether counsel intentionally elicited the evidence and focused on it during trial." Id. (internal quotation marks and citation omitted). A court "may conclude that the party's substantial rights were not affected [as long as the court] . . . can say with fair assurance . . . that the judgment was not substantially swayed by the error." Id. (internal quotation marks and citation omitted). Thus, "the inquiry is always directed at the same central question–how much of an effect did the improperly admitted or excluded evidence have on the verdict?" Peat v. Vanguard Research, Inc., 378 F.3d 1154, 1162 (11th Cir. 2004)

Defendant argues that it is entitled to a new trial because the Court allowed prejudicial evidence concerning Hartford's claim handling and the execution of the excess judgment. As explained below, Defendant's argument has merit.

Defendant argues that it should be granted a new trial, because the Court permitted irrelevant evidence relating to Hartford's handling of Mr. Ackley's claim.[1]  Specifically, Defendant argues that allowing such evidence enabled the jury to compare the way Hartford and Defendant handled the claims that arose out of the traffic accident and find that Defendant acted in bad faith because it handled the claim differently.

Defendant filed a motion in limine on this issue, which the Court denied. In denying the motion, the Court noted that "Plaintiffs argued that such evidence is relevant, because it supports Plaintiffs' assertion that if Defendant had timely offered its policy limits, Mr. Ackley would have accepted." (Doc. No. 100). Furthermore, after finding that such evidence was relevant, the Court stated that the differences between the relationship of Hartford and Mr. Ackley versus Defendant and Mr. Ackley could be explored through cross examination.

Upon reflection, the Court finds that it should have narrowed the scope of the admissibility of the evidence pertaining to Hartford. While the fact that Hartford settled Mr. Ackley's claim and the amount that Hartford paid is relevant to support Plaintiffs' assertion that Mr. Ackley would have settled with Defendant, Hartford's claim handling (i.e., the events leading up to Hartford's payment of Mr. Ackley's claim, such as the number of contacts that Hartford had with Mr. Ackley and the timing of those contacts) should have been excluded. Allowing evidence of Hartford's claim handling may have confused the jury in this case and

---

[1] Mr. Ackley had uninsured/underinsured motorist coverage through Hartford.

allowed them to find that Defendant acted in bad faith because it acted differently than Hartford acted. While the Court cannot find that allowing evidence of Hartford's claim handling, in itself, is sufficient to warrant a new trial, the Court finds that this error combined with the error of the admission of evidence concerning the payment of the excess judgment (as explained below) produced a substantial prejudicial effect, such that the Court cannot say with fair assurance that the jury's verdict was not substantially swayed by the combination of these errors.

Specifically, Defendant argues that it was unfairly prejudiced by the Court allowing Plaintiffs to elicit testimony that Mr. Ackley intended to execute the judgment against Plaintiffs, that Plaintiffs did not have the ability to pay the judgment, and the effect the jury's verdict would have on who was responsible to pay the judgment. Defendant points out four instances where the Court allowed such evidence.

First, the Court allowed Plaintiff Angelo Mendez to be questioned about whether he had the ability to pay the excess judgment. (Doc. No. 137, p. 38-39). The Court overruled Defendant's objection to the question, and Mr. Mendez responded that he did not have the ability to pay it. (Doc. No. 137, p. 38-39).

Next, Plaintiffs' counsel questioned Mr. Ackley's attorney in the underlying lawsuit, Theodore Leopold, about the options Mr. Ackley had available to him once he obtained the judgment against Plaintiffs in the underlying lawsuit. (Doc. No. 137, p. 114). Defendant objected, and the Court overruled the objection. (Doc. No. 137, p. 114). Mr. Leopold stated that Mr. Ackley could have executed the judgment against Plaintiffs or hold the execution in abeyance pending the resolution of this bad faith lawsuit. (Doc. No. 137, p. 114). Plaintiffs' counsel asked Mr. Leopold about the holding in abeyance of the excess judgment, Defendant

again objected, and the Court overruled the objection. Mr. Leopold explained that holding in abeyance meant that Mr. Ackley held off executing the judgment against "the Mendezes or whomever." (Doc. No. 137, 114-15). Defendant had a standing objection to this line of questioning. Mr. Leopold proceeded to testify that executing a judgment means that the party holding the judgment is entitled to the assets (equal to the value of the judgment) of the person or company that the judgment is against. (Doc. No. 137, p. 115). Mr. Leopold went on to agree that once Mr. Ackley obtained the $630,000 judgment against Plaintiffs, he could have tried to take $630,000 worth of their assets from them or wait and allow them to pursue this bad faith claim. (Doc. No. 137, p. 115).

Plaintiffs' counsel asked Mr. Leopold who Mr. Ackley would collect the judgment from if the bad faith claim was successful. (Doc. No. 137, p. 116). Defendant objected, and the Court overruled the objection. Mr. Leopold responded that if the bad faith claim was successful, Mr. Ackley would execute the judgment against Defendant. (Doc. No. 137, p. 116). Plaintiffs' attorney went on to ask that if the bad faith claim was successful, would Defendant be responsible to pay the excess judgment, to which Mr. Leopold responded affirmatively. (Doc. No. 137, p. 116-17). Mr. Leopold also stated that if the bad faith claim was not successful, Mr. Ackley had the option of executing the judgment against Plaintiffs for the full value of the judgment, plus statutory interest. (Doc. No. 137, p. 117). When asked if Mr. Ackley would execute the judgment against Plaintiffs if the bad faith claim was not successful, Mr. Leopold responded that Mr. Ackley would execute the judgment against them. (Doc. No. 137, p. 117-18).

Next, Defendant points out that Plaintiffs' counsel questioned Defendant's expert,

9

Stephen Day, about the agreement to hold the execution in abeyance, and the Court allowed the questioning despite Defendant's objections. (Doc. No. 138, p. 158-160). Thereafter, Plaintiffs' counsel questioned Mr. Day regarding the length of time that a judgment lasts. (Doc. No. 138, p. 163-64).

Finally, Defendant points out that during Plaintiffs' closing arguments, Plaintiffs' counsel focused on what would happen if Plaintiffs lost this case. Specifically, the following exchange occurred:

| | |
|---|---|
| Plaintiffs' counsel: | What this case comes down to, members of the jury, is something that Mr. Leopold testified to yesterday. Mr. Leopold was asked what happens if the Mendezes lose this bad faith case. |
| Defense counsel: | Objection, Your Honor. |
| The Court: | Overruled. |
| Plaintiffs' counsel: | Mr. Leopold said, we did an agreement with the Mendezes that we would postpone executing on any assets they may have to allow them to bring their bad faith case. And he was asked what happens if the Mendezes lose their bad faith case. |
| Defense counsel: | Objection, Your Honor. |
| The Court: | Overruled. He was asked that. Go ahead. |
| Plaintiffs' counsel: | And he testified, I know what's going to happen. I talked to Mr. Ackley about it, and Mr. Ackley has already |

>>instructed me to try to execute against the Mendezes. Try
>>to execute and collect whatever you can from the
>>Mendezes.

(Doc. No. 138, p. 213-14). Thereafter, Defendant's counsel objected again, and argument was had at sidebar. The Court overruled Defendant's objections. (Doc. No. 138, p. 214-15).

Upon reflection, the Court should not have allowed Plaintiffs to solicit evidence regarding the effect of the jury's verdict on who would have to pay the underlying judgment and Plaintiffs' ability to pay the underlying judgment. While the jury is entitled to know that Mr. Ackley obtained a $630,000 judgment in the underlying lawsuit, who pays that judgment and whether Plaintiffs had the ability to pay the judgment is irrelevant to the issue for the jury to decide–did Defendant act in bad faith in failing to settle Mr. Ackley's claim.

Defendant was unfairly prejudiced by this irrelevant evidence that had no purpose other than to play on the jury's emotions, and such evidence likely affected the jury's verdict in this case. The facts of this case are that Mr. Ackley lost his wife in a fatal car accident, Mr. Ackley's claim against Plaintiffs was not settled, and Mr. Ackley obtained a $630,000 judgment against them. By Plaintiffs' counsel's focusing on the fact that Plaintiffs did not have the ability to pay the judgment (to a man that had lost his wife) and that Defendant would have to pay the judgment if the jury found in Plaintiffs' favor, Defendant was unfairly prejudiced.

Based on all of the evidence in this case, it appears to the Court that the jury's verdict was unfairly swayed by the irrelevant evidence regarding execution of the judgment. Defendant's failure to pursue a settlement of Mr. Ackley's claim more aggressively could arguably be considered negligent, and negligence can be considered by the jury in determining

whether Defendant acted in bad faith. However, given that Defendant attempted to contact Mr. Ackley twice regarding his claim and that Mr. Ackley ignored Defendant's attempts, any negligence on Defendant's part is arguably minimal. This, combined with the fact that Plaintiffs' counsel focused on the execution of the judgment and whether Plaintiff had the ability to pay it, causes the Court great concern that the jury's verdict was unduly swayed by sympathy.

The Court finds that the verdict is against the great weight of the evidence, and the Court cannot say with fair assurance that the jury's verdict was not substantially swayed by their sympathy as a result of the introduction of the evidence regarding the execution of the judgment. Accordingly, the Court grants Defendant's motion for a new trial.

## IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendant's Motion for Judgment as a Matter of Law (Doc. No. 128) is **DENIED**.

(2) Defendant's Motion for New Trial (Doc. No. 129) is **GRANTED**.

(3) The Court **VACATES** its judgment (Doc. No. 122, 132) and Bill of Costs (Doc. No. 133).

(4) The Court **TERMINATES** the remaining pending post-trial motions (Doc. No. 125, 126, 130, 134).

(5) The Clerk is directed to reopen this case and return it to active status.

(6) The Court sets this case for a new trial on the Court's January 2008 trial calendar.

(7) A pretrial conference will be held on ***Tuesday, December 18, 2007 at 8:30 a.m.*** before the Honorable Susan C. Bucklew in Courtroom 14A of the Sam M.

Gibbons U.S. Courthouse, located at 801 North Florida Avenue, Tampa, Florida 33602.

**DONE AND ORDERED** at Tampa, Florida, this 31st day of October, 2007.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record